Filed 5/21/26  Martin v. Agency for the Performing Arts CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RYAN MARTIN, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AGENCY FOR THE PERFORMING ARTS, INC., <br><br> Defendant and Appellant. | B337931 <br><br> (Los Angeles County Super. Ct. No. 20SMCP00231) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Mark Epstein, Judge.  Affirmed.

Jay R. Stein; Miller Barondess and James Goldman for Plaintiff and Appellant.

Mitchell Silberberg & Knupp and Jean Pierre Nogues for Defendant and Appellant.

## INTRODUCTION

This case arises from a dispute between Ryan Martin (Martin) and his former employer, the Agency for the Performing Arts (APA).  During his employment, Martin purchased shares of APA stock pursuant to a shareholder agreement.  Under the terms of the agreement, APA was to buy back Martin's shares if he ceased employment with the company.

A decade later, Martin left the company, triggering the buy-back provision in his shareholder agreement.  The parties could not agree on how to value Martin's shares for purposes of the buy-back.  APA tendered payment using what it asserted was the correct valuation for Martin's shares. Martin rejected the tender and filed suit for breach of contract.

After a bench trial, the court entered judgment in Martin's favor but awarded him damages below what he sought.  The trial court also awarded Martin prejudgment interest, calculated at the statutory rate of 10 percent per annum under Civil Code section 3289.[1]

The parties now cross-appeal.  Martin alleges the trial court erred in calculating his damages under the shareholder agreement and in denying his post-trial motions for attorneys' fees and for leave to amend his complaint. APA alleges the trial court erred in using the statutory 10 percent interest rate to calculate Martin's prejudgment interest.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following background facts are largely taken from the undisputed portions of the trial court's statement of decision.

---

[1]  All further statutory references are to the Civil Code unless otherwise specified.

I.     *Employment History*

Martin was a senior talent agent employed by APA.  Over the years, APA sold shares of stock to certain key employees.  The contracts governing the sales included buy-back provisions under which APA had to buy back an employee's shares upon the employee's death, retirement, or termination.  The contracts also provided that, in the event a buy-back was triggered, the purchase price for the employee's shares would be calculated using the "book value" of APA, as determined by an accountant, as well as an additional sum for "goodwill."  In a 2004 board resolution, APA set the value of goodwill at $250,000, unless the employee in question died or retired.  In those instances, the board set the value of goodwill at $1 million.

At a December 2005 meeting, APA's board of directors unanimously voted to issue 1,000 shares of Class B stock to Martin.  At the same meeting, the board reaffirmed the valuation of goodwill from its 2004 resolution.

On January 1, 2006, Martin and APA entered a shareholder agreement formalizing Martin's purchase of the 1,000 shares of APA stock.  The shareholder agreement contained a buy-back provision under which APA was obligated to buy back all of Martin's shares upon his death or the termination of his employment.  The buy-back provision specified that the purchase price for Martin's stock would be the "book value of the Shares."  The agreement also provided that the "book value" of Martin's shares would "be determined by the Certified Public Accountant at that time servicing the Corporation and such determination so made, and delivered to the Corporation shall be final, binding and conclusive upon the Corporation and upon the Shareholder.  The determination of book value shall be made in accordance with sound accounting practice and with the customary policies and methods of the Corporation.  Book value shall include 'the value of good will'.  For the

purposes of this Agreement, 'the value of good will' shall be such value as may hereafter be placed upon good will by resolution of the board of directors of the Corporation and prevailing on the date six months prior to the date of . . . the termination of Shareholder's employment."

The agreement also allowed the company to buy-back Martin's stock in installments. The agreement set minimum amounts for APA's installment payments. If APA elected to pay in installments, its first payment had to be accompanied by a promissory note obligating it "to pay the balance of the purchase price remaining unpaid after the payment of the first installment of the purchase price."

Between the 2006 shareholder agreement and subsequent stock purchase agreements, Martin ultimately purchased 19,000 shares of APA stock.[2]

In 2008, Martin signed an employment agreement with APA that stated he would be elected to APA's board of directors no later than October 14, 2010.

II.    *Martin's Departure from APA*

In 2018, Martin had a falling out with APA's management, and the parties were unable to reach an agreement to renew Martin's contract. As a result, his employment at the agency terminated on December 31, 2018, triggering the buy-back provision in his shareholder agreement. This gave rise to a dispute between Martin and APA over the purchase price of his shares.

---

[2] With APA's consent, Martin later assigned his shares in APA to The Ryan E. Martin and Delaine Martin Family Trust.

4

On appeal, it is uncontested that Martin's 2006 shareholder agreement contemplated that, sometime after the agreement was signed, APA's board of directors would set the goodwill value of Martin's shares. It is also uncontested that this never happened. After the December 2005 meeting approving the sale of Martin's shares, APA never again convened any formal meetings of its board of directors or shareholders while Martin was an employee. During that time, APA largely disregarded corporate formalities, and the company was run by its chief executive officer, James Gosnell (Gosnell).[3] Gosnell essentially acted as "a one-person Board of Directors" who occasionally consulted with other executives at APA. As a result, APA's board of directors never determined the value of goodwill for Martin's shareholder agreement.

When Martin left the agency in 2018, APA offered to buy back Martin's shares using the board's 2005 goodwill valuation. To this end, APA's accountant determined that, excluding goodwill, APA had a negative book value. Nonetheless, APA decided, for purposes of the buy-back, that it would view its book value as zero. As it did with some other employees who left the agency, APA decided to use the $1 million valuation for APA's goodwill even though Martin did not retire or pass away. APA determined that Martin's 19,000 shares of APA stock represented 17.5 percent of APA's outstanding shares, and thus Martin's proportionate share of the $1 million goodwill figure amounted to $175,000.

---

[3] Gosnell owned Class A shares in APA, while all other employees owned Class B stock. The only distinction between the two classes of stock was that Gosnell's Class A shares gave him significantly greater voting power to the point where he had "the effective power to dictate the result of any shareholder vote."

On February 4, 2019, APA tendered a promissory note to Martin for $175,000, asserting this satisfied its buy-back obligation under the shareholder agreement. Martin rejected the tender, claiming it was inadequate. This lawsuit followed.

III.  *Martin's Lawsuit*

In July 2020, Martin filed suit against APA.[4] Martin's operative pleading is the first amended petition for writ of mandate and complaint filed in 2021. Martin's amended pleading asserted three claims: a petition for writ of mandate, a claim for declaratory relief, and a cause of action for breach of contract. His writ petition and declaratory relief claim both sought access to APA's corporate records under Corporations Code section 1601. Martin's cause of action for breach of contract alleged that APA breached the shareholder agreement by failing to tender the full amount he was owed for his shares of APA stock.

A.  *Pretrial Briefing*

In his pretrial briefing, Martin argued that under the language of his shareholder agreement, the value of goodwill for purposes of buying back his APA stock had to be set by APA's board of directors at some point after the execution of the agreement. Martin argued that, because APA's board failed to do so, his shareholder agreement "should be construed as requiring

---

[4] As the shares were transferred to The Ryan E. Martin and Delaine Martin Family Trust, the suit was filed by Martin as trustee of the trust and not by Martin in his individual capacity. As no issues on appeal turn on the legal distinction between Martin as an individual and Martin as a trustee, we use "Martin" interchangeably to refer to the individual and the party to this lawsuit for clarity.

6

goodwill to [be] valued based on [APA's] actual value in 2018, as opposed to the value arbitrarily and secretly assigned it to [*sic*] back in 2005." According to Martin, the parties agreed "on the [r]ecord . . . that the valuation date for Martin's shares is to be December 31, 2018." Martin's expert determined that the "actual value" of APA's goodwill in December 2018 was "within a range of $28.3 million and $44.8 million."

In its pretrial briefing, APA argued that the goodwill valuation assigned by APA's board of directors in 2005 applied to Martin's 2006 shareholder agreement. According to APA, Martin was fully aware that the 2005 board resolution setting goodwill alternatively at $250,000 or $1 million (depending on the circumstances of the employee's departure) was the relevant goodwill valuation under the 2006 agreement.

B. *Trial*

Martin's claims were tried in an eight-day bench trial. Following trial, the court issued a proposed statement of decision, concluding that Martin's claim for breach of contract turned on the interpretation of terms "hereafter" and "goodwill" as used in Martin's shareholder agreement.

As to goodwill, the court noted that before the 2006 sale of stock to Martin, APA used "somewhat arbitrary" figures of $250,000 and $1 million to value goodwill for purposes of buying back stock from employees. The court found no evidence in the record "that would constitute any reasoning behind" the goodwill figures APA used. The court also concluded that there was "no evidence . . . that 'goodwill' was ever intended to mean what it means to an accountant. Even reading the contract in Martin's best light, the Board of Directors was to set it from time to time, but there were no guidelines or rules regarding how to do so. . . . '[G]oodwill' was whatever the Board of

7

Directors said it was. . . . The court simply cannot believe that anyone believed that the number was based on some accounting principle intended to come to a real value."

And with regard to the use of "hereafter," the trial court noted, "there was little in the way of parol evidence offered. There was the evidence of some other contracts with the different wording . . . but that's about all. There was no discussion of the term that anyone recalled, let alone any written back and forth about the term."

Given the evidence of the parties' understanding of the term "goodwill," the trial court rejected Martin's contention that the use of "hereafter" in the shareholder's agreement meant "that until the Board of Directors acted 'goodwill' meant the going concern value of APA less the value of its assets."

The court ultimately concluded that APA breached the shareholder agreement. In quantifying Martin's damages, the trial court acknowledged that by the time Martin left the company, APA had a practice of using the $1 million figure to value goodwill when buying back stock. However, the court held it would be inappropriate to use that $1 million figure to value Martin's stock. Instead, the court noted that in 2017, Gosnell decided to implement a "Senior Executive Retirement Plan" (SERP). As part of that plan, Gosnell decided to revisit the 2005 goodwill valuation. The plan outlined a "ramp up of goodwill" over a seven-year period, which would eventually top out at $10 million.

The court acknowledged that APA's disregard of corporate formalities meant that its board never formally approved the SERP. It nonetheless concluded that the SERP "was something akin to a formal goodwill valuation approved by Gosnell" and "appear[ed] to be the functional equivalent of a

Board decision given the dysfunctional nature of corporate governance at APA."

At the time Martin left APA in 2018, APA's goodwill figure increased under the SERP from $1 million to $2 million. The court held this was the proper figure to use to value goodwill for purposes of calculating Martin's damages. The court used this figure to determine Martin was entitled to have his shares purchased for his proportionate 17.5 percent share of the $2 million valuation, or $350,000. The court also determined that Martin was entitled to prejudgment interest on this sum.

In calculating damages, the trial court rejected Martin's argument that, because he never accepted APA's buy-back tender, he technically remained an APA shareholder until 2022 and was therefore entitled to the $10 million goodwill valuation in effect at that time through the SERP. The court determined Martin's argument was belied by the language of the shareholder agreement itself, which set "the pertinent valuation date as being tied to the date of termination." The court concluded that using the 2022 goodwill figure "would yield a windfall to Martin, who did nothing to aid in any growth in APA's value after he left."

Both sides filed objections to the trial court's proposed statement of decision. The trial court overruled the parties' objections and adopted its proposed statement of decision as its final statement.

IV. *Post-Trial Motions*

After the conclusion of trial, the parties brought three motions that are relevant on appeal.

## A. *Martin's Motion to Amend*

Shortly after the trial court issued its proposed statement of decision, Martin filed a motion for leave to amend his complaint. In his motion, Martin sought to add a new claim for liability and damages under Delaware law.[5] Martin proposed to amend his operative pleading to assert that he remained a shareholder in 2019, when APA restructured its corporate form from a corporation to a limited liability company. Martin claimed that he was not given proper notice of this restructuring and was therefore entitled under Delaware General Corporation Law section 262 to have APA repurchase his stock at its appraised market value, regardless of the terms of the shareholder agreement.

The trial court denied the motion, concluding that Martin's proposed amendment sought to assert "an entirely new theory of liability and damages," that Martin could have presented at trial but elected not to. The court noted that allowing the proposed amendment would be "extremely unjust and prejudicial" to APA as "it would require essentially a whole new trial."

## B. *APA's Motion to Set Aside*

APA filed a motion to set aside the trial court's award of prejudgment interest. APA argued the trial court erred in setting the rate of prejudgment interest at 10 percent per annum. Instead, APA argued that a rate of 4.125 percent was proper. APA's argument rested on language from Martin's shareholder agreement which specified that "The balance of the purchase price remaining unpaid after the payment of the first installment of the

---

[5] APA was a Delaware corporation until it was converted into a Delaware limited liability company in 2019.

10

purchase price shall bear simple interest per annum at the rate of 75% of the prime rate in effect at the Bank of America on the due date of the installment of interest. Interest payments shall be calculated from the date of the payment of the first installment of the purchase price." APA argued that 75 percent of the relevant Bank of America prime rate was 4.125 percent.

The trial court denied APA's motion. The court determined that, by its express terms, the language from the shareholder's agreement was only triggered "after the payment of the first installment of the purchase price." The court noted that because Martin was entitled to a goodwill valuation of $2 million, APA never tendered the full "first installment of the purchase price" that Martin was entitled to under the shareholder agreement. Therefore, because APA did not make or tender a sufficient first installment payment, the trial court determined that the contract language setting a lower interest rate did not apply.

### C.  *Martin's Motion for Attorneys' Fees*

Martin then filed a motion to recover his attorneys' fees. Martin's motion was based on a clause in the promissory note APA tendered to Martin in February 2019, which Martin rejected. The provision stated: "[APA] agrees to pay all of [Martin]'s costs of collection, including, without limitation, reasonable attorneys' fees, whether or not suit is filed, and all costs of suit and preparation for suit (whether at trial or appellate level), in the event any payment of principal, interest or other amount is not paid when due."

Martin argued that his shareholder's agreement and promissory note must be read together, and he was therefore entitled to the benefit of the fee-

11

shifting provision in the promissory note because he prevailed on his action to enforce the shareholder's agreement.

The trial court denied the motion. The court noted that Martin did not sue to enforce or collect on the promissory note. The court also declined Martin's invitation to read the promissory note and shareholder's agreement together. Alternatively, the trial court determined that Martin was not entitled to attorneys' fees on his breach of contract claim because he was not the "prevailing party" on that claim under Civil Code section 1717. The court concluded that, while Martin did recover on his claim, he only obtained "a fraction" of what he sought. Given this "limited success," the court held that Martin was not a prevailing party under section 1717 because he did not truly prevail "in a practical sense."

## V.    *Judgment and Appeals*

The trial court entered judgment awarding Martin $350,000 in damages on his claim for breach of contract and $166,773.31 in prejudgment interest. APA timely appealed the trial court's judgment and subsequent order denying its motion to vacate the judgment. Martin timely cross-appealed from the trial court's judgment and subsequent orders denying his motion for leave to amend and motion to recover attorneys' fees.

## DISCUSSION

## I.    *Damages*

Martin raises various claims of error by the trial court, claiming both that the trial court made legal errors in interpreting his shareholder agreement and that the trial court's damages calculation was not supported by substantial evidence. Regardless of the framing, Martin's contention is

12

ultimately the same: the trial court erred by using the $2 million goodwill valuation to calculate his damages for breach of contract at $350,000.

A.  *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Provided the "'statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' [Citation.]" (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

"The determination of damages is primarily a factual matter on which the inevitable wide differences of opinion do not call for the intervention of appellate courts." (*Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230, 241.) "Where there is more than one legally permissible measure of damages, the trial court's choice of a particular measure under the specific circumstances of the case is a matter of discretion." (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 562.)

"[A]n award of damages will not be disturbed if it is supported by substantial evidence. The evidence is insufficient to support a damages award only when no reasonable interpretation of the record supports the

figure." (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691, citations omitted.) Where a party challenges the sufficiency of the evidence to support the amount of damages awarded, our power as an appellate court "begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 (*Crawford*).) "The testimony of one witness may provide substantial evidence." (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767–768; see Evid. Code, § 411.)

B.     *Substantial Evidence Supports the Trial Court's Award*

"Damages awarded to an injured party for breach of contract 'seek to approximate the agreed-upon performance.' [Citation.] The goal is to put the plaintiff 'in as good a position as he or she would have occupied' if the defendant had not breached the contract. [Citation.] In other words, the plaintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain. [Citations.] [¶] The injured party's damages cannot, however, exceed what it would have received if the contract had been fully performed on both sides. (Civ. Code, § 3358.) This limitation of damages for breach of a contract 'serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise.' [Citation.]" (*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 967–968 (*Lewis Jorge*).)

14

The question is not—as Martin attempts to frame it on appeal—whether APA and the trial court had the right to "construe" or "revise" the shareholder agreement to use the goodwill valuation from the SERP to value Martin's shares. The trial court did not do so. It did not read the SERP into the shareholder agreement or otherwise reform, revise, or rewrite its terms. The trial court simply determined that using the increased goodwill valuation from the SERP would give Martin the benefit of the bargain he would have received if APA had carried out its obligation under the agreement to set a value for goodwill. Accordingly, the question before us is whether substantial evidence supports the trial court's valuation of the benefit of Martin's bargain at $350,000. (*Crawford, supra,* 3 Cal.2d at p. 429; *Lewis Jorge, supra,* 34 Cal.4th at pp. 967–968.) We conclude that it does.

The record before us contains the following evidence: (1) before Martin acquired stock, APA used arbitrary figures to calculate goodwill when buying back stock from employees. (2) APA's stock was divided into two classes, with Gosnell owning Class A stock and all other employees owning Class B. (3) Gosnell's shares gave him control over any shareholder vote. (4) Before Martin left the company, Gosnell determined that APA's goodwill value should be increased in phases. (5) If this phased increase in goodwill had been formally adopted by APA's board, then at the time Martin departed the company, "goodwill" in Martin's shareholder agreement would have been valued at $2 million. (6) Martin's proportional share of a $2 million goodwill figure was $350,000.

We conclude this is substantial evidence supporting the trial court's conclusion that applying the $2 million goodwill valuation would put Martin in the same position that he would have been in if APA's board had fulfilled its obligation under Martin's shareholder agreement.

15

It is true that APA's board never formally approved the $2 million valuation. But it is also true that Gosnell had de facto control over the company and testified at trial that APA implemented the incremental increase in goodwill value. Accordingly, we agree with the trial court that Gosnell's opinion of APA's goodwill value is highly probative evidence showing how APA's board would have valued goodwill under Martin's shareholder agreement if the company had observed corporate formalities and held a formal vote.

Nor did the court err by using the $2 million figure from 2018 rather than the $10 million value for goodwill in 2022 under the SERP. Even if we were to assume that Martin remained a shareholder in 2022, his shareholder agreement expressly provided that the relevant goodwill valuation would be the one that was "prevailing on the date six months prior to the date" his employment terminated. Indeed, in his pretrial briefing below, Martin expressly acknowledged that "the valuation date for Martin's shares is to be December 31, 2018." Substantial evidence therefore supports the trial court's decision to apply the goodwill valuation from 2018 rather than 2022.

Because Martin's shareholder agreement contemplated that the board would set the value for goodwill, the trial court could reasonably conclude that this figure approximated the benefit that Martin bargained for in signing the shareholder agreement. This is all that the law requires. "'Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. [Citation.]'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774.)

On appeal, Martin argues the trial court erred by stating that Gosnell decided to increase APA's goodwill valuation through the SERP. According to Martin, the increased valuation figure was instead part of a "Stock Redemption Plan" or "SRP." Therefore, Martin argues, the trial court's damages award is not supported by substantial evidence. We disagree.

While Martin filed objections to the trial court's proposed statement of decision, he did not bring this claimed factual error to the trial court's attention. Martin has therefore forfeited this claim of factual error. "[I]f a party fails to bring omissions or ambiguities in the statement of decision's factual findings to the trial court's attention, then 'that party waives the right to claim on appeal that the statement was deficient in these regards.'" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 (*Arceneaux*) ["[I]t would be unfair to allow counsel to lull the trial court and opposing counsel into believing the statement of decision was acceptable, and thereafter to take advantage of an error on appeal although it could have been corrected at trial"].)

Moreover, as APA argues, there was evidence presented at trial that the SERP and SRP were interrelated in that the SERP was designed to fund the increase in buy-back price that would be owed because of the SRP's increase in the value of goodwill. As a result, even if we were to assume the trial court erred by referring to the SERP rather than SRP, Martin has not shown this error in acronym use prejudiced him in any way at trial. (Cal. Const., art. VI, § 13; *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century*) ["we cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of

17

justice"]; *Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006 (*Travis*) ["[W]e review results and not reasoning"].)

We conclude Martin's attempt to distinguish between the SERP and SRP in this manner for the first time on appeal is a distinction without a difference that does not constitute reversible error by the trial court.

C.      *Martin's Novel Theories under the Civil and Commercial Codes*

On appeal, Martin for the first time argues that he was alternatively entitled to recover the fair market value of his shares pursuant to Civil Code sections 1611 and 1613[6] and Commercial Code section 2305.[7]  The parties acknowledge that Martin did not raise these arguments at trial or seek relief under these statutes in his operative pleading.

---

[6] Section 1611 provides: "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."  Section 1613 provides in pertinent part that "Where a contract provides an exclusive method by which its consideration is to be ascertained, which method appears possible on its face, but in fact is, or becomes, impossible of execution, such provision only is void."

[7] Commercial Code section 2305 states in pertinent part "(1) The parties if they so intend can conclude a contract for sale even though the price is not settled.  In such a case the price is a reasonable price at the time for delivery if . . . [t]he price is left to be agreed by the parties and they fail to agree . . . [¶]  (2) A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.  [¶]  (3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as canceled or himself fix a reasonable price."

18

## 1.    *Forfeiture*

APA contends that Martin has forfeited any argument for relief under these three statutes by failing to raise these claims below.  We agree.

"The traditional rule is that 'a party must raise an issue in the trial court if they would like appellate review.'  [Citation.]"  (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.)  The failure to do so results in forfeiture of that claim of error.  (See *Egelston v. State Personnel Bd.* (2025) 112 Cal.App.5th 1050, 1055 ["Because this contention was not raised below, it is forfeited"]; *In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695.)

Martin acknowledges he did not raise these statutes below, but argues he may nevertheless raise them for the first time on appeal because they present a question of law.  We disagree.  The three statutes Martin invokes on appeal codify the uncontested proposition that "where services are rendered by one party from which another derives a benefit, a presumption of law arises from the proof thereof that the person enjoying the benefit is bound to pay what the services are reasonably worth."  (*Pierce Engineering Co. v. Chohon* (1961) 196 Cal.App.2d 516, 518.)

No one disputes this general principle of contract law.  And if the question was simply whether these statutes generally apply to Martin's employment with APA, we might be faced with a purely legal question.  But Martin can only establish reversible error here if he can show that the reasonable value of his services under those statutes exceeded the trial court's damages award.  (Cal. Const., art. VI, § 13; *Century, supra,* 139 Cal.App.4th at p. 963; *Travis, supra,* 91 Cal.App.5th at p. 1006.)  The reasonable value of Martin's services is a question of fact.  (*Zint v. Topp Industries, Inc.* (1960) 184 Cal.App.2d 240, 244 (*Zint*) ["it is the function of

19

the trier of fact to ascertain and declare the reasonable value of the services" appropriate under § 1611].)

Accordingly, Martin's novel arguments under the Civil Code and Commercial Code necessarily present questions of fact which Martin has failed to preserve for appellate review.

### 2. *Martin's Arguments Also Fail on the Merits*

Even if we were to ignore his forfeiture, we would find Martin's new arguments unpersuasive. We note Martin did not raise these statutory arguments when he objected to the trial court's proposed statement of decision. When the trial court issues a statement of decision, "a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment [citation]." (*Arceneaux, supra,* 51 Cal.3d at p. 1134.) "If a party fails to raise omissions or ambiguities in the trial court, the appellate court will infer the trial court made all factual findings necessary to support the judgment." (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1424.)

We therefore infer that the trial court determined that the reasonable value of Martin's shares in APA was $350,000, and that this amount, coupled with his other forms of compensation from APA, gave Martin the reasonable value of the services he provided while employed by APA. As we have already determined, the court's conclusion in that regard is supported by substantial evidence. On the record before us, we cannot conclude that the trial court's award was inadequate under the new statutes cited by Martin. (See *Zint, supra,* 184 Cal.App.2d at p. 244 [determination of reasonable value of services under § 1611 is reviewed under the more deferential abuse of discretion standard].)

20

II.    *Martin's Post-Trial Motion for Leave to Amend*

Martin argues the trial court erred in denying his motion for leave to amend his complaint after the conclusion of trial.  We find no error by the trial court and affirm.

A.    *Legal Standards*

"We review the denial of a motion for leave to amend for abuse of discretion."  (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.)  "'A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding.'"  (*Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 32; see Code Civ. Proc., § 473, subd. (a)(1).)  "But this policy applies "'only '[w]here no prejudice is shown to the adverse party.'"'"  (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.)  Further, "'a long deferred presentation of the proposed amendment without a showing of excuse for the delay'" may provide "'a valid reason for denial.'"  (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613; *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097.)

B.    *Trial Court Did Not Abuse Its Discretion in Denying Martin's Motion for Leave to Amend*

In moving for leave to amend, Martin did not dispute that he was seeking to assert a new claim against APA.  Instead, his arguments centered on his reasonable diligence in seeking to assert the new claim under Delaware law.  Martin argued that he only presented one theory of damages at trial: that he was entitled to the market appraisal value of APA's goodwill

21

as determined by his expert. He also argued that APA did not argue in favor of a $2 million goodwill valuation as provided for by the SERP, but instead argued it had properly valued goodwill at $1 million. Thus, Martin claims, he had no idea that the court would decline to credit either party's goodwill calculation and instead adopt the $2 million goodwill valuation from the SERP. Therefore, it was not until the trial court issued its proposed statement of decision that Martin realized for the first time that "he would need to advance a legal theory other than breach of contract."

We discern no error by the trial court in rejecting Martin's argument. First, California law has long recognized that, in setting the amount of damages, the trier of fact is not bound to accept the argument or evidence of either side. (See *Linforth v. San Francisco Gas & Elec. Co.* (1909) 156 Cal. 58, 63 [recognizing rule that the amount of damages "'may be more or less in amount than that stated by any witness'"].) Accordingly, "A trier of fact is not bound by the exact value . . . announced by an expert, but "'may fix the value . . . bringing to bear [its] own general knowledge and is not necessarily bound by express evidence of the value of the services performed.'" [Citation.]" (*Abbott v. Taz Express* (1998) 67 Cal.App.4th 853, 857.)

Given these settled principles of law, Martin could not reasonably expect that the trial court was obligated to adopt any party's theory of damages.

Nor can Martin credibly claim to be surprised that the court relied on evidence regarding the increase in goodwill value under the SERP. Martin introduced this evidence at trial. In his pretrial briefing, Martin specifically pointed the trial court to the SERP as evidence of APA's valuation of goodwill. Indeed, Martin argued Gosnell's increased goodwill valuation under the SERP was binding on APA even though it was never formally

approved by APA's board of directors. Martin argued the SERP "show[ed] that the senior executives in control of APA . . . affirmed that APA's value was, in fact, much more than $1 million." Put simply, as Martin expressly asked the trial court to consider the SERP in determining the value of goodwill under the shareholder agreement, he cannot now complain that the court accepted his invitation to do so.

On appeal, Martin acknowledges that the key question is "not whether the new allegations are based on a new theory, but whether there is a legitimate excuse for the delay and whether permitting the moving party to advance a new theory would be unfairly prejudicial." We conclude that Martin has failed to establish a legitimate excuse for his delay in seeking to allege an alternate theory of liability and damages under Delaware law. In the absence of such a legitimate excuse, Martin cannot establish that the trial court abused its discretion in denying his motion for leave to amend.

III.   *Martin's Motion for Attorneys' Fees*

    A.   *Legal Standards*

California follows the "American rule," under which each party to a lawsuit must pay its own attorneys' fees unless a contract, statute, or other law authorizes a fee award. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) Martin argues that he was entitled to an award of fees under Civil Code section 1717 because the promissory note tendered by APA contained an attorneys' fees provision.

Section 1717, subdivision (b)(1) provides: "The court . . . shall determine who is the party prevailing on the contract for purposes of this section." It also specifies that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also

23

determine that there is no party prevailing on the contract for purposes of this section." We review a trial court's prevailing party determination for abuse of discretion. (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 979.) Under this standard, "appellate courts 'are required to uphold a reasonable ruling *even if we might not have ruled the same way and a contrary ruling would also be sustainable*.' [Citation.]" (*Ibid.*)

B.    *Martin Has Not Established an Abuse of Discretion by the Trial Court*

On appeal, Martin acknowledges the trial court denied his motion because it determined he was not the "prevailing party" under section 1717. Martin has not established that the trial court abused its discretion in this regard. Instead, he argues in conclusory fashion that he was a prevailing party under section 1717 because he "obtained a substantial recovery" at trial. Alternatively, Martin argues that in bringing his motion below he did not brief the question of whether he was a prevailing party for purposes of section 1717 and therefore it was "unfair" for the court to resolve this question without hearing his arguments on the subject. We reject these arguments.

First, we note that Martin provides no authority in support of his assertions. Martin merely asserts, without citing any authority, that "While the lodestar may be reduced to account for the moving party's limited success, the cases in which an award of attorneys' fees was completely denied are generally cases where plaintiff recovered only a nominal amount—not where, as here, plaintiff obtained a substantial recovery despite defendant's argument that it did nothing wrong and plaintiff was entitled to nothing." Nor has Martin offered any support for his claim that a trial court cannot

24

make a prevailing party determination under section 1717 unless and until the moving party provides argument on that question.

"When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 ["we may disregard conclusory arguments that are not supported by pertinent legal authority"].) On this basis alone, we could affirm the trial court's denial of Martin's motion. We also note that, as the moving party, Martin bore the burden below of establishing that he was the prevailing party under section 1717. (See *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.) Martin's decision not to brief a foundational element of his claim for attorneys' fees does not lead to the conclusion that the trial court abused its discretion.

Moreover, even if we were to accept Martin's argument that it was "unfair" for the court to conclude that he was not the prevailing party for purposes of section 1717, he has not established any prejudice stemming from this purported error. On appeal, Martin does not identify what arguments or authority he would have presented on this point that would have established that he was the prevailing party under section 1717. Martin does not identify any facts or law that the trial court misapprehended in determining he was not the prevailing party under section 1717. In the absence of such a showing, he has not established any prejudice from the trial court's ruling.

Having determined the trial court did not err in denying Martin's motion on the ground that he was not the prevailing party under section 1717, we need not reach Martin's other claims of error in the trial court's ruling and decline to do so. We therefore affirm the trial court's order

25

denying Martin's motion for attorneys' fees.  (Cal. Const., art. VI, § 13; *Century, supra,* 139 Cal.App.4th at p. 963; *Travis, supra,* 91 Cal.App.5th at p. 1006.)

IV.   *Prejudgment Interest*

APA does not challenge the trial court's ruling that Martin was entitled to an award of prejudgment interest; the only dispute on appeal is what interest rate should be used to calculate the amount of prejudgment interest owed to Martin.  APA contends the trial court erred by applying the statutory 10 percent interest rate in awarding Martin prejudgment interest.

A.   *Legal Standards*

"Section 3289 provides rules for interest rates applicable to breaches of contract.  If the contract specifies a legal rate of interest, a court will apply that rate 'after a breach [of contract] . . . until the contract is superseded by a verdict or other new obligation.'  (§ 3289, subd. (a).)  If a contract does not stipulate a legal rate of interest, a 10 percent per annum interest rate applies in the event of a breach.  (*Id.*, subd. (b).)"  (*Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 525–526.)  "Determining whether the 10 percent interest rate of section 3289, subdivision (b) . . . applies is a question of law we review de novo."  (*Id.* at p. 525.)

B.   *APA Has Not Established Error by the Trial Court*

The question before us is whether Martin's shareholder agreement specified an interest rate applicable here.  The pertinent language from the shareholder agreement provides: "The balance of the purchase price remaining unpaid after the payment of the first installment of the purchase

price shall bear simple interest per annum at the rate of 75% of the prime rate in effect at the Bank of America on the due date of the installment of interest." There is no dispute that, if this provision applies, the applicable interest rate would be 4.125 percent.

In denying APA's motion to set aside the judgment, the trial court interpreted the quoted language from the shareholder agreement as being expressly conditioned on APA making a first installment payment due to Martin under the terms of the agreement. The court concluded that APA never made such a payment to Martin—a conclusion no party contests on appeal—and therefore the interest rate specified in the agreement did not apply. We find no error in the trial court's interpretation of the parties' agreement.

""""[I]t is the appellant's responsibility to affirmatively demonstrate error[,]"""" and """"review is limited to issues which have been adequately raised and briefed."" [Citation.]" (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492.) APA bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, even where our review is de novo. (See *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399.) "'[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]" (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

APA has not carried its burden to convince us that the trial court's interpretation was erroneous. The plain language of the shareholder agreement unambiguously states that *if* APA tendered the first installment payment, *then* the 4.125 percent rate would apply to the remaining balance.

27

APA did not satisfy the condition precedent that triggered the lower interest rate. The shareholder agreement did not specify an interest rate that would apply if APA failed to make any payment to Martin. The shareholder agreement thus did "not stipulate a legal rate of interest" that would apply if APA failed to tender a full first installment payment. In the absence of such a provision in the shareholder agreement, the statutory 10 percent rate applies. (§ 3289, subd. (b).)

We find nothing unreasonable with the trial court's interpretation of the plain language of the agreement. The court's interpretation reasonably gives effect to the plain language of the agreement and provides reciprocal benefits to the parties. Any other interpretation would run contrary to the well-established principle of contract law requiring that "[t]he whole of a contract is to be taken together," "to give effect to every part, if reasonably practicable, with each clause helping to interpret the other." (§ 1641.) Applying this principle, we cannot say the trial court erred in applying the statutory interest rate. We therefore affirm the trial court's award of $166,773.31 in prejudgment interest to Martin.

## DISPOSITION

The judgment is affirmed. The trial court's order denying Martin's motion for attorneys' fees is affirmed. The trial court's order denying Martin's motion for leave to amend is affirmed. The trial court's order denying APA's motion to set aside or vacate judgment is affirmed. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


TAMZARIAN, J.


COGLIATI, J.*

---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.